# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| SUSAN R. THURINGER,<br><br>    Plaintiff,<br><br>vs.<br><br>THE AMERICAN NATIONAL RED CROSS,<br><br>    Defendant. | No. C04-2078<br><br>**ORDER** |

This matter comes before the court pursuant to Defendant American National Red Cross' July 5, 2005 motion to compel (docket number 28), Plaintiff Susan Thuringer's July 20, 2005 motion for an extension of time in which to designate rebuttal experts (within docket number 29),[1] and the plaintiff's motion to withdraw her resistance to the defendant's motion to compel neuropsychological examination (docket number 31). For the reasons set forth below, the defendant's motion to compel (docket number 28) is granted, the plaintiff's motion for extension of time (within docket number 29) is granted, and the plaintiff's motion to withdraw resistance (docket number 31) is granted.

## Relevant Factual and Procedural Background

The plaintiff in this case, Susan Thuringer, is suing the defendant, American National Red Cross, for injuries allegedly sustained while donating blood at an

---

[1] The plaintiff, in her resistance to the defendant's motion to compel examinations, moves that "[i]f any Rule 35 examination is allowed by the [c]ourt, the [counsel for the plaintiff] would request that [the plaintiff] be afforded 30 days from the date of disclosure of all opinions in which to designate an appropriate rebuttal expert, if necessary." The defendant, in its reply to the plaintiff's resistance, states that it has no objection to a 30 day extension for the plaintiff to designate two rebuttal experts.

employer-sponsored blood drive on June 6, 2003. Trial in this matter is currently scheduled for February 21, 2006.[2]

During the course of discovery, the defendant "requested two independent evaluations: a psychological evaluation to be conducted by Dr. Daniel Tranel at the University of Iowa in Iowa City, and a vocational rehabilitation evaluation to be conducted by Clark Williams of Aspire, in Des Moines." According to the defendant, the plaintiff objected to both evaluations and the plaintiff further stated that the plaintiff "expected to have his experts present at the same time as the evaluation was conducted, to 'do additional history and testing on the same date.'" The plaintiff initially objected to examination by Clark Williams "because he is not a physician or psychologist," and the plaintiff "had requested a list of questions and list and schedule of tests before agreeing to either examination." The defendant has declined to request such lists from its experts "[b]ecause pre[-]scripting questions and testing unduly fetters the examination process and introduces the opportunity for 'coaching.'" The defendant now moves for an order compelling the plaintiff to submit to examinations by Dr. Tranel and Mr. Williams.

## CONCLUSIONS OF LAW

Fed. R. Civ. P. 35 allows the court, in its discretion, to order a physical or mental examination of a person, in relevant part, as follows:

> When the mental or physical condition . . . of a party . . . is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner . . . . The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

Fed. R. Civ. P. 35(a) (2005).

---

[2] Hon. Linda R. Reade, District Court Judge, United States District Court for the Northern District of Iowa.

## I. Proposed Psychological Evaluation

In support of its motion to compel psychological examination of the plaintiff by Dr. Tranel, the defendant asserts that (1) the plaintiff "has placed her mental state at issue by claiming damages for an unspecified level of 'aggravation' of her pre-existing depression and by claiming damages for her pain, which several of her treating professionals have opined is either a result of or influenced by psychological factors"; (2) further psychological evaluation of the plaintiff is necessary as "[n]one of [the plaintiff's] treatment providers have been able to estimate to what extent there has been any 'aggravation' of her depression," and the plaintiff has "never participated in a comprehensive psychological assessment designed to thoroughly assess either her depression or her pain"; (3) "[a]s a board certified neuropsychologist, Dr. Tranel is suitably certified to conduct the psychological evaluation of [the plaintiff"; and (4) "[a] court order permitting the requested evaluation is the only means by which the [defendant] can obtain a psychological evaluation on the [p]laintiff about psychological issues that are central [to] defending [the plaintiff's] claims." The defendant further asserts that in order for Dr. Tranel's evaluation of the plaintiff to be "valid," third parties must be excluded from the evaluation process. Specifically, the defendant asserts that the plaintiff's request to include the plaintiff's expert and allow the plaintiff's expert to ask questions and administer tests at the same time as Dr. Tranel is unreasonable because (1) in order to create a valid testing atmosphere, the testing should be administered "under standardized testing conditions," which conditions "exclude third parties from observing and certainly from participating in the evaluation process"; and (2) the presence of third parties would serve only to "heighten the adversarial nature of the process and impede the development of rapport necessary to conduct a psychological evaluation."

The defendant also objects to the plaintiff's request for a "roster and schedule of tests " which Dr. Tranel anticipates performing on the plaintiff. The defendant asserts that it has already requested that Dr. Tranel "define the scope of his evaluation, relying on his

professional judgment to do so," and that Dr. Tranel has responded, accordingly, by providing the following proposed scope of evaluation:

> The examination at the University of Iowa Hospitals and Clinics would take place in the Benton Neuropsychology Laboratory. A comprehensive evaluation of cognitive functioning, personality and emotional functioning would be conducted by a team comprised by a clinical neuropsychologist and a technician, under my supervision. The evaluation would involve neuropsychological and psychological tests that measure intellect, memory, speech and language, perception and attention, decision-making, judgment, emotional status, and personality attributes. The testing takes approximately 6-7 hours, and normally can be completed easily in a one-day session (with a lunch break). The testing involves paper-and-pencil forms, question-and answer formats, and related interview techniques; it is entirely non-invasive.

The defendant is "disinclined" to require Dr. Tranel to produce a list of evaluation measures or the questions that he plans to ask during the evaluation. The defendant resists doing so because (1) "[t]he evaluation procedure should be sufficiently fluid that if one measure or question prompts another question, or need for further assessment, Dr. Tranel can accomplish this assessment without disrupting any prescribed schedule;" and (2) "itemizing the measures to be used and questions to be asked introduces the possibility of coaching."

In the event that the court orders a psychological evaluation of the plaintiff, the plaintiff requests that[3] (1) the court allow counsel for the plaintiff to be present with the

---

[3] The plaintiff initially resisted the defendant's motion to compel a psychological examination of the plaintiff, arguing that the defendant had made no showing of "good cause" as required for an examination to be ordered pursuant to Fed. Rule Civ. P. 35 as Dr. Tranel "appears not to have written or spoken on the subject of depression, chronic pain or conversion reaction," and accordingly, it is reasonable to believe that "Dr. Tranel has been chosen" simply for his "'forensic' ability, i.e. his ability to assist in the efforts of the defense in litigation" which does not constitute "good cause" for an evaluation to
(continued…)

plaintiff during the interview portion of the plaintiff's examination by Dr. Tranel "in order to take notes and prepare to cross examine Dr. Tranel regarding his forensic opinions in this matter"; (2) the court order that the plaintiff be allowed "allowed all reasonable breaks upon request, based upon her existing medical condition"; (3) the court order that Dr. Tranel not question the plaintiff "regarding liability issues, litigation strategy or any attorney-client communications she may have had at any time"; (4) the court order that Dr. Tranel "immediately produce all notes, raw test data, reports and . . . all documents in his file [to counsel for the plaintiff] in a sealed envelope, to be provided by [counsel for the plaintiff] to another licensed clinical psychologist in a timely fashion" so that the plaintiff's counsel "will have the ability to timely consider rebuttal experts in this matter"; and (5) the court order that the defendant reimburse the plaintiff for mileage "at the IRS authorized rate, as well as a meal reimbursement for her noon meal on the date of the examination."

The court finds that the conditions and restrictions requested by the plaintiff concerning Dr. Tranel's neuropsychological evaluation are unnecessary and inappropriate. This court, like the court in <u>Tomlin v. Holecek</u>, 150 F.R.D. 628, 633 (D. Minn. 1993), is "hesitant–absent a compelling reason–to condition a Rule 35 examination upon restrictions which will foster a greater degree of advocacy in the conduct of such examinations than is, already, unavoidably present." Allowing counsel to be present during the evaluation process would be tantamount to "endorsing, if not promoting, the infusion of the adversary process into the psychologist's examining room to an extent which is . . . inconsistent with the just, speedy and inexpensive resolution of civil disputes, and with the dictates of Rule 35." <u>Tomlin</u>, 150 F.R.D. at 634. In regard to the plaintiff's request for

---

³(…continued)
be made. The plaintiff subsequently filed a motion to withdraw her resistance to the defendant's motion to compel the neuropsychological evaluation, but maintains her request, as set forth in her resistance, for conditions to be placed upon such evaluation (docket number 31).

"all reasonable breaks upon request, based upon her existing medical condition," the court assumes that Dr. Tranel, in his professional judgment, will allow the plaintiff to take reasonable breaks throughout the course of his evaluation. Based upon the plaintiff's claims of pain associated with sensory and motor testing, set forth in her motion to withdraw her resistance to the defendant's motion to compel the neuropsychological evaluation, any sensory and motor testing of the plaintiff beyond that of a general psycho sensory evaluation shall be deferred per Dr. Haban's report supporting such a condition.[4] The evaluation shall be conducted according to Dr. Tranel's proposed scope of evaluation, as set forth herein. Dr. Tranel's evaluation of the plaintiff shall take place at Dr. Tranel's office, located at the Benton Neuropsychology Laboratory University of Iowa Hospital, Department of Neurology, 200 Hawkins Drive, Iowa City, Iowa. The examination shall take place at a date and time to be mutually agreed upon by the parties, no later than September 1, 2005.

## II. Proposed Vocational Rehabilitation Evaluation

The defendant also moves for an order compelling the plaintiff to submit to a vocational rehabilitation evaluation by Mr. Williams. The defendant asserts that the plaintiff has placed "her ability to work directly at issue" by requesting damages for past lost wages and future loss of earnings, and that a "non-invasive interview . . . is not unreasonable and is supported by good cause given [the plaintiff's] wage claim in this case." The defendant further asserts that an order compelling a vocational rehabilitation evaluation of the plaintiff is appropriate because (1) the evaluation sought by the defendant by way of a vocational rehabilitation evaluation is "neither duplicative nor invasive"; (2) Mr. Williams is a suitably certified examiner as a certified disability management specialist who has "been working with injured persons, assisting them [in returning] to the

---

[4] Specifically, Dr. Haban's report indicates that the plaintiff's "psychosensory evaluation found her to be grossly intact for tactile, auditory, and visual sensation," and that "[f]urther sensory or motor testing was deferred due to [the plaintiff's] pain."

6

workplace, [and] evaluating their ability to return [to work] and under what circumstances a return would be possible, for more than twenty years"; (3) Mr. Williams is a well qualified examiner under Fed. Rule Civ. P. 35, because "Rule 35, as recently amended . . . does not require that an examiner be a psychologist or a physician";[5] (4) good cause exists to permit the evaluation because the records currently available to the defendant are insufficient to show whether the plaintiff is capable of working; and (5) the plaintiff's claim that the defendant lacks "good cause" for a vocational rehabilitation evaluation because the plaintiff has not designated a vocational rehabilitation expert is insufficient as "[t]he discovery rules are broad and permit discovery into a matter that may lead to the discovery of admissible evidence" and given the fact that the plaintiff has claimed "significant damages for lost wages," a vocational rehabilitation evaluation may very well lead to relevant and admissible evidence.

The plaintiff resists the defendant's motion to compel a vocational rehabilitation evaluation. First, the plaintiff argues that any Fed. R. Civ. P. 35 evaluation must be conducted by either a physician or a psychologist.[6] The plaintiff further argues that the defendant has failed to show "good cause" for an evaluation, since the defendant can obtain the information sought through other means as well, including the plaintiff's medical records or by deposing the plaintiff. Finally, the plaintiff argues that the cases cited by the defendant in which vocational rehabilitation examinations were permitted are not controlling here, because in those cases, the plaintiff had retained a vocational expert to testify at trial, which is not the case here.

---

[5] In support of this proposition, the defendant cites to the cases of Van Sice v. Oldcastle Glass, Inc., 2005 U.S. Dist. LEXIS 550 (D. Colo. 2005); Wilks v. Epic Marine, 2003 U.S. Dist. LEXIS 18106 (D. La. 2003); Casey v. Burlington N. R.R., 1997 U.S. Dist. LEXIS 696 (D. Or. 1997).

[6] In support of the proposition that a Rule 35 examination must be conducted by a physician or psychologist, the plaintiff cites to Peters v. Nelson, 153 F.R.D. 635 (N.D. Iowa 1994) and Stanislawski v. Upper River Services, Inc., 134 F.R.D. 260, 261 (D. Minn. 1991).

In the event that the court orders a vocational rehabilitation evaluation at the defendant's request, the plaintiff requests that the following conditions be placed upon the examination:

(1) the examination should take place at the office of the plaintiff's counsel.
(2) the plaintiff's counsel should be allowed to be present to monitor and take notes during the evaluation.
(3) the plaintiff should be allowed to take reasonable breaks upon request.
(4) Mr. Williams should not be permitted to ask any questions concerning liability issues, litigation strategy, attorney-client communications, or "any other issues that are not relevant to her past employment or vocational analysis."
(5) Mr. Williams should be required to immediately produce all notes, reports and any other documents in his file to counsel for the plaintiff, so that counsel for the plaintiff may timely consider the propriety of retaining a rebuttal expert.

The defendant first objects to the plaintiff's request for restrictions to be placed upon questions that may be asked by Mr. Williams. The defendant argues that such a restriction on Mr. Williams ability to shape the evaluation would "unduly fetter the professional discretion of the evaluator" as well as introduce the opportunity for coaching. The defendant explains that Mr. Williams has sufficiently defined the scope of his proposed evaluation of the plaintiff as consisting of an interview "designed to assess [the plaintiff's] current condition, attitudes, and motivation to work combined with the requirements of her employer to determine whether and under what circumstances [the plaintiff] can return to work." Second, the defendant objects to the presence of any third parties or recording equipment in the vocational rehabilitation evaluation.

The defendant's motion to compel the plaintiff to submit to a vocational rehabilitation examination by Mr. Williams is granted. First, the court finds that the defendant has established "good cause," as required by Fed. R. Civ. P. 35, for the

examination. The plaintiff has made a claim for lost wages and future loss of earnings, thereby placing both her ability and motivation to work squarely at issue. See Wilks v. Epic Marine, L.L.C., 2003 U.S. Dist. LEXIS 18106 (E.D. La. 2003). "The physical and mental condition of a plaintiff [certainly is determinative of her] future employment prospects" and accordingly, "[k]nowledge of the physical and mental condition of a plaintiff is necessary for the trier of fact to have in order to determine the damages for future lost wages," which the plaintiff is seeking in this matter. Wilks, 2003 U.S. Dist. LEXIS at *3. Second, the court finds that Mr. Williams is a suitable examiner under Fed. R. Civ. P. 35. "The manner and conditions of a court-ordered medical examination, as well as the designation of the person or persons to conduct such an examination, are vested in the sound discretion of the trial court." Sanden v. Mayo Clinic et al., 495 F.2d 221, 225 (8th Cir. 1974). In 1991, Fed. R. Civ. P. 35 was "amended and extended 'to include other certified or licensed professionals, such as dentists or occupational therapists, who are not physicians or clinical psychologists, but who may be well-qualified to give valuable testimony about the physical or mental condition that is the subject of dispute.'" Wilks, 2003 U.S. Dist. LEXIS at *3-4 (citing Fed. R. Civ. P. 35(a) Advisory Committee's Note, 1991 amendment).

Finally, the court finds that, as was the case regarding the plaintiff's requested conditions and restrictions concerning the psychological evaluation, the plaintiff's proposed conditions, restrictions, and requests concerning the vocational rehabilitation examination are likewise unnecessary and inappropriate. Here again, the court assumes that Mr. Williams, in his professional judgment, will allow the plaintiff to take reasonable breaks throughout the course of the vocational rehabilitation evaluation. The purpose and scope of the vocational rehabilitation evaluation of the plaintiff, as set forth in the defendant's motion to compel, shall be "to evaluate [the plaintiff's] ability to work and will include an interview with [the plaintiff]." Mr. Williams' evaluation of the plaintiff shall take place at Mr. Williams' office, located at 8125 Parkview Drive, Des Moines, Iowa.

9

The examination shall take place at a date and time to be mutually agreed upon by the parties, no later than September 1, 2005.

Upon the foregoing,

IT IS ORDERED that the defendant's motion to compel the neuropsychological and vocational rehabilitation evaluations of the plaintiff is granted as set forth in the body of this order (docket number 28). The plaintiff's motion to withdraw resistance to the defendant's motion to compel neuropsychological evaluation is granted (docket number 31). The plaintiff's motion for an extension of time in which to designate rebuttal experts is granted (within docket number 29). The plaintiff shall have 30 days from the date of disclosure of Dr. Tranel's and Mr. Williams' opinions in which to designate rebuttal experts.

August 3, 2005.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT